UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL RYAN,

    Plaintiff,

v.

NOAH NAGY,
HEIDI WASHINGTON, and
GRETCHEN WHITMER,

    Defendants.

Case No. 20-11528
Honorable Laurie J. Michelson
Mag. Judge Patricia T. Morris

**OPINION AND ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT [58]**

Sean Ryan is an inmate at the G. Robert Cotton Correctional Facility (JCF), a Michigan Department of Corrections prison located in Jackson, Michigan. Many inmates at JCF live in shared housing: either two inmates share a small cell or 150 inmates share a large pole barn. Ryan believes that because inmates must share sleeping and living quarters, they are at risk of contracting contagious diseases including—but not limited to—COVID-19. Based on this belief, Ryan maintains that MDOC Director Heidi Washington's and JCF Warden Noah Nagy's policy or practice of shared housing violates the Eighth Amendment of the U.S. Constitution and the analogous provision of the Michigan Constitution. So Ryan filed this lawsuit.

I.

In a January 2022 opinion and order, this Court dismissed Ryan's claims insofar as they sought monetary relief for past injuries. *See generally Ryan v. Nagy*,

No. 20-11528, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022). The Court reasoned that Ryan had not cited precedent that gave Defendants clear notice that the shared housing arrangements at JCF were unlawful because they exposed inmates to contagious diseases. *See id.* at *2–3. So to the extent that Ryan had sued Defendants in their individual capacities, his claims for damages were barred by qualified immunity. *See id.* And, the Court explained, to the extent that Ryan had sued Defendants in their official capacities, his claims for damages were barred by sovereign immunity. *Id.* at *3. Thus, "Ryan's claims, insofar as they seek damages, [we]re DISMISSED." *Id.* at *7.

Ryan disagrees with that ruling and asks the Court to change it. (ECF No. 58.)

## II.

Ryan seeks relief under Federal Rule of Civil Procedure 60(b), but that rule does not apply here. Rule 60(b) is limited to finals orders or judgments. Fed. R. Civ. P. 60 advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief . . . ."). In the order that Ryan challenges, the Court ruled that he was not entitled to damages for his claims, but "Ryan's claims, insofar as they seek prospective, injunctive relief, remain[ed] in this case." *Ryan*, 2022 WL 260812, at *7. So the Court did not enter a final order or judgment. *See* 10 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2654 (4th ed.) ("Absent a certification under Rule 54(b) any order in a multiple-party or multiple-claim action,

even if it appears to adjudicate a separable portion of the controversy, is interlocutory" rather than final).

Although Ryan's motion does not invoke the proper procedural rule, Ryan is not a lawyer who has been trained in those rules. And, as will be explained, his motion has some merit. So the Court will address the merits. *See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.").

### III.

Ryan's motion challenging this Court's January 2022 order essentially comes in two parts. For one, Ryan says that this Court erred in finding that there was no clearly established law giving Defendants notice that their conduct was unlawful. For two, Ryan says that his claim for damages, insofar as it is based on a violation of the Michigan Constitution, should not have been dismissed.

The Court disagrees with Ryan on part one but agrees with him on part two.

### A.

The Court previously ruled that the cases Ryan had cited did not "clearly establish[] that requiring two people to share a one-person cell, or requiring many people to share a pole barn, violates the Eighth Amendment because it exposes the inmates to contagious diseases." *Ryan*, 2022 WL 260812, at *3.

Ryan says this finding was error. In support of that assertion, Ryan cites numerous cases that he says clearly establish "that it is unconstitutional to mingle inmates with contagious diseases with other inmates." (ECF No. 58, PageID.885.)

Ryan again runs into a procedural problem. Aside from *Helling* and *Hutto*, which this Court already addressed, Ryan did not cite the cases he relies on now in his briefing before the Magistrate Judge or in his objections to this Court. (*See* ECF No. 27, PageID.375 (citing *Helling* and *Hutto* as clearly established law); ECF No. 32, PageID.427–430 (same).) And, generally speaking, it is not fair for a litigant to ask for reconsideration of a Court's decision based on arguments that could have been, but were not, made before the Court ruled. *See Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[A]bsent compelling reasons, [the Federal Magistrates Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."); *cf.* E.D. Mich. LR 7.1(h) (providing that a motion for reconsideration is warranted where "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based *on the record and law before the court at the time of its prior decision*" (emphasis added)).

And even looking past the procedural improprieties, none of the cases Ryan now cites gave Washington and Nagy clear notice that housing two people in a single-person cell or housing many people in a pole barn is unconstitutional because it is possible for one or more of them to have a serious, contagious disease.

Ryan again cites *Helling* and *Hutto*. But *Helling* did not give clear notice because the plaintiff had to endure a cellmate who breathed cigarette smoke into the air, not a cellmate who breathed pathogens into the air. *See* 509 U.S. 25, 28 (1993). And while *Hutto* did involve contagious diseases, the housing conditions there were quite different than those at JCF. *See* 437 U.S. 678, 682–83 (1978) ("At night the

prisoners were given mattresses to spread on the floor. Although some prisoners suffered from infectious diseases such as hepatitis and venereal disease, mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening.").

Ryan also cites *Valentine v. Collier*, 141 S. Ct. 57 (2020); but that is merely a dissent (from a denial of an application to vacate a stay). Dissents do not clearly establish anything.

Ryan directs the Court's attention to four district court opinions. It is highly doubtful that four district courts can clearly establish law, especially when three of them are from outside this Circuit. *See Hopkins v. Nichols*, 37 F.4th 1110, 1116 (6th Cir. 2022) ("To determine whether the law is clearly established we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." (internal quotation marks omitted)); *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020) ("[W]e can't expect officers to keep track of persuasive authority from every one of our sister circuits. They spend their time trying to protect the public, not reading casebooks."); *cf. Rhodes v. Michigan*, 10 F.4th 665, 682 (6th Cir. 2021) ("[W]here an array of our sibling circuits have acted in concert on an issue, we have not hesitated to hold that out-of-circuit precedent has clearly established a constitutional right.").

In any event, the four district court opinions did not address a claim like Ryan's.

Consider *Wright* and *Joy* first. True, they say that "inmates can state an Eighth Amendment claim for confinement in a cell with an inmate who has a serious contagious disease that is spread by airborne particles, such as tuberculosis." *Joy v. Healthcare C.M.S.*, 534 F. Supp. 2d 482, 485 (D. Del. 2008); *see also Wright v. Hayden*, No. CIV A 5:08CV-179-R, 2009 WL 909562, at *2 (W.D. Ky. Mar. 31, 2009) (similar). But what appears to be missing from that statement of law is what prison officials know: requiring inmates to share a cell while knowing that one of them has a serious, contagious disease is different than requiring inmates to share a cell while knowing it is possible for one of them to have a serious, contagious disease. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (providing that prison official violates the Eighth Amendment only if he infers a "substantial" risk of serious harm). Further, tracing *Wright* and *Joy*'s statement of law back to its source ends at *Helling* and *Hutto*. And, again, the facts of *Helling* and *Hutto* are not like the facts of this case. As for *Wright* itself, the court there found that officials did not expose the plaintiffs to a substantial risk of serious harm when they required them to share a cell with an HIV-positive inmate. 2009 WL 909562, at *3. And the court in *Joy* merely found that the plaintiffs had pled a viable claim where they alleged that the warden "was aware that inmates were not thoroughly screened for disease before going into general population and that Correctional Medical Services does not have a policy in place to examine inmates before placing them into general population." 534 F. Supp. 2d at 485. Ryan has not directed the Court to evidence that Warden Nagy is similarly indifferent.

6

A third district court opinion that Ryan relies on, *Legate v. Livingston*, is further afield. That case addressed a prisoner's claim that he contracted Hepatitis C because a prison policy "allowed Native American practitioners to smoke a communal pipe." No. 2:14-CV-269, 2014 U.S. Dist. LEXIS 180135, at *2 (Aug. 6, 2014), *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 2997 (S.D. Tex. Jan. 12, 2015).

Ryan also relies on *Cameron v. Bouchard*, 462 F. Supp. 3d 746 (E.D. Mich. 2020). True, that early-pandemic decision did find it problematic that "almost half of the Jail's population was housed in multi-person cells, with a significant number in housing units with more than 10 individuals." *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 777 (E.D. Mich. May 21, 2020). But that decision was vacated on appeal. *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) ("Given the lack of evidence as to whether the empty cells could be safely occupied, Plaintiffs have not satisfied their burden of showing that officials have left these cells empty out of an objectively (or subjectively) reckless disregard of the risks of COVID-19."). Vacated decisions are not law, let alone clearly established law. *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002).

Accordingly, the Court did not err in finding that Defendants are entitled to qualified immunity. While the Eighth Amendment might prohibit prison officials from housing a prisoner who they know has a serious, contagious disease with other prisoners, Ryan's claim goes further. As this Court understands it, Ryan claims that Washington and Nagy violated the Eighth Amendment by requiring inmates to share

7

housing because they know that at any given time, an inmate *might* have a serious, contagious disease. None of the cases Ryan cites go that far. Indeed, most prisons in the country use some form of shared housing.

### B.

Ryan also claims that because he brought a claim under the Michigan Constitution, the Court erred in completely dismissing his damages claims. (*See* ECF No. 58, PageID.888.) Although the case Ryan cites is not directly on point (*see id.*), the Court agrees with Ryan that his claims for damages should not have been dismissed in their entirety.

In its prior opinion, the Court focused on Ryan's claim under the Eighth Amendment of the U.S. Constitution and found that a combination of qualified immunity (individual capacity) and sovereign immunity (official capacity) barred Ryan's claim for damages. *See Ryan v. Nagy*, No. 20-11528, 2022 WL 260812, at *2–6 (E.D. Mich. Jan. 26, 2022).

As for Ryan's claim under the Michigan Constitution's "cruel or unusual" provision, the Court "ma[d]e no finding as to the viability" of that claim. *Ryan*, 2022 WL 260812, at *7. The Court noted that Defendants urged the Court to decline supplemental jurisdiction over that claim and that the Magistrate Judge had recommended the same. And while "[t]hat may well end up being the proper route to take," the Court concluded that "this issue can be revisited at a later date." *Id.* That made sense: the parties still needed to litigate Ryan's Eighth Amendment claim for injunctive relief.

Unfortunately, the Court's opinion concluded with this order: "Ryan's claims, insofar as they seek damages, are DISMISSED." *Id.* at *7. That was too broad. Although at least two judges have argued otherwise, the Sixth Circuit has held that sovereign immunity does not bar a claim for damages when a state official is sued in her individual capacity for violating state law. *See Williams v. Com. of Ky.*, 24 F.3d 1526, 1543 (6th Cir. 1994) ("[N]either the Eleventh Amendment nor *Pennhurst* [*v. Halderman*, 465 U.S. 89 (1984)] deprives federal courts of jurisdiction over state law claims for damages against state officials sued in their individual capacities."); *accord Koch v. Dep't of Nat. Res.*, 858 F. App'x 832, 836 (6th Cir. 2021). *But see In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 785 (6th Cir. 2017) (Sutton, J., concurring) ("I am skeptical about this statement in *Williams*. . . . I see no reason why the rationale of [*Pennhurst*] does not apply equally, if not more forcefully, to a state law money damages action against a state employee."); *Koch v. Dep't of Nat. Res.*, 858 F. App'x 832, 840 (6th Cir. 2021) (Bush, J., concurring) ("I agree with Judge Sutton that the logic of *Pennhurst* applies to state-law claims for damages against state officials in their personal capacities."). And it *appears* that state-law immunities do not protect state officials who violate the state constitution. *See Bauserman v. Unemployment Ins. Agency*, — N.W.2d —, No. 160813, 2022 WL 2965921, at *14 & n.13 (Mich. July 26, 2022) (holding that the State of Michigan can be liable for damages for violating the Michigan Constitution but that "whether other entities, such as . . . individual government actors, can be liable for constitutional torts is not before us, and we decline to address that question"). And so the Court should not have

9

dismissed Ryan's claim for damages insofar as it was based on the Michigan Constitution's "cruel or unusual" punishment clause.

So what is the best course forward? The first step is clear: the Court will reinstate Ryan's request for damages insofar as it is based on the Michigan Constitution. From there the path ahead gets murkier. In accordance with this Court's January 2022 order, it appears that the parties' discovery focused on present and future circumstances—not on past circumstances relating to damages. (*See e.g.*, ECF No. 48, PageID.637 (objecting to discovery request on the basis that discovery should be limited to Ryan's circumstances as of February 1, 2022).) And recently, Defendants have moved for summary judgment on Ryan's remaining claims. (ECF No. 64.) So, potentially, the reinstatement of Ryan's claim for damages will require unwinding this litigation a bit.

For now, the Court need not look too far down the road. Based on evidence gathered after this Court's January 2022 opinion, the Court doubts that Ryan has standing to seek forward-looking, injunctive relief. This doubt is detailed in a separate opinion and order entered today. If Ryan in fact lacks standing to seek injunctive relief, then Ryan's Eighth Amendment claim under the U.S. Constitution would need to be dismissed in its entirety. (As discussed, the Court already dismissed the Eighth Amendment claim for damages.) And if the federal claim is dismissed in its entirety, it may be best to decline supplemental jurisdiction over Ryan's state claim.

## IV.

In short, the Court GRANTS IN PART and DENIES IN PART Ryan's motion for relief from judgment (ECF No. 58). His Eighth Amendment claim, insofar as he seeks damages for past injuries, remains dismissed—the Court did not err in finding that qualified and sovereign immunity shield Defendants from that federal claim. But Ryan's claims for damages should not have been dismissed in their entirety because he also sought damages for Defendants' violation of the Michigan Constitution. Thus, Ryan's claim for damages under the Michigan Constitution will—for the time being—be reinstated. To the extent the January 2022 opinion stated otherwise—and only to that limited extent—it is VACATED. *See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment."). The Court will address whether to expand discovery to address Ryan's damages claim at a later date.

SO ORDERED.

Dated: November 21, 2022

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE