UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL RYAN,

      Plaintiff,

v.

NOAH NAGY,
HEIDI WASHINGTON, and
GRETCHEN WHITMER,

      Defendants.

Case No. 20-11528
Honorable Laurie J. Michelson
Mag. Judge Patricia T. Morris

---

**OPINION AND ORDER
REGARDING PLAINTIFF'S OBJECTIONS [66] AND
DIRECTING PLAINTIFF, AND DEFENDANTS TO RESPOND, TO
SHOW CAUSE WHY HE HAS ARTICLE III STANDING TO SUE FOR
PROSPECTIVE, INJUNCTIVE RELIEF**

---

Sean Ryan is an inmate at the G. Robert Cotton Correctional Facility (JCF), a Michigan Department of Corrections prison located in Jackson, Michigan. Many inmates at JCF live in shared housing: either two inmates share a small cell or 150 inmates share a large pole barn. Ryan believes that because inmates must share sleeping and living quarters, they are at risk of contracting contagious diseases including—but not limited to—COVID-19. Based on this belief, Ryan maintains that MDOC Director Heidi Washington's and JCF Warden Noah Nagy's policy or practice of shared housing violates the Eighth Amendment of the U.S. Constitution and the analogous provision of the Michigan Constitution. So Ryan filed this lawsuit.

The parties engaged in discovery, Ryan moved to compel better answers and production to his discovery requests, and Magistrate Judge Patricia T. Morris, who is handling all pretrial matters, largely denied Ryan's motion to compel.

Ryan now objects to the Magistrate Judge's order. (ECF No. 66.)

For the reasons set out below, two of Ryan's three objections will be overruled. But one of Ryan's objections, along with evidence that the Court only recently reviewed, raises questions about whether Ryan has Article III standing to seek injunctive relief. Accordingly, the Court will direct Ryan to show cause why his claims for injunctive relief should not be dismissed.

## I.

In a January 2022 opinion and order, this Court dismissed Ryan's claims insofar as they sought monetary relief for past injuries. *See generally Ryan v. Nagy*, No. 20-11528, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022). What remained of this case was Ryan's claims for prospective, injunctive relief. *Id.* at *7.

Given that Ryan's claims for injunctive relief survived Defendants' motion, the Court permitted the parties to gather evidence relevant to that forward-looking relief: "the discovery should focus on facts relating to Ryan's risk of contracting a serious, contagious disease (like COVID-19) due to his housing status. Because discovery cannot be based on a moving target, the parties should focus on Ryan's circumstances as of February 1, 2022." *Id.*

So the parties engaged in discovery. In March 2022, Defendants deposed Ryan. (*See* ECF No. 64-2.) And Warden Nagy prepared an affidavit about the housing

2

arrangements at JCF. (ECF No. 64-3.) Ryan served document requests, interrogatories, and requests for admissions on Defendants.

Washington and Nagy objected to much of Ryan's written discovery. So Ryan moved to compel responses. He also filed several other motions.

In a recent order, Magistrate Judge Patricia T. Morris addressed six motions filed by Ryan and two filed by Washington and Nagy. (ECF No. 63.) Three of her findings are relevant to Ryan's objections. For one, she declined to appoint an independent expert to assess ventilation and air quality at JCF. (ECF No. 63, PageID.954–956.) For two, she declined Ryan's request for supervised internet access. (ECF No. 63, PageID.956–958.) For three, she largely denied Ryan's motions to compel. In doing so, the Magistrate Judge noted that during his deposition, Ryan admitted that, except for one day, he had been housed in a single-person cell for the past three years. (ECF No. 63, PageID.946.) The Magistrate Judge reasoned, "Ryan does not have standing to challenge Defendants' 'mass housing' practices merely because it is possible that he may be subjected to them later." (ECF No. 63, PageID.946–947 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).)

Ryan has filed objections to the Magistrate Judge's order. (ECF No. 66.)

## II.

As opposed to a report and recommendation, a magistrate judge's order is accorded significant deference. *See* 28 U.S.C. § 636(b)(1)(A). In particular, this Court reviews the order under a "clearly erroneous or contrary to law" standard. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (internal quotation marks

omitted). "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). And "[a]n order is 'contrary to the law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (internal quotation marks omitted).

### III.

Ryan makes three objections to the Magistrate Judge's order. Basically, Ryan's objections relate to hiring an air-quality expert, supervised internet access, and whether his claims are limited to his current housing situation.

### A.

In denying Ryan's request for an air-quality expert, the Magistrate Judge found that "the appointment of an expert under Rule 706 is not appropriate under [the] circumstances." (ECF No. 63, PageID.955.) Federal Rule of Evidence 706 permits a court to "appoint any expert that the parties agree on and any of its own choosing." The Magistrate Judge reasoned that to prevail on his Eighth Amendment claim, Ryan had to show that Washington or Nagy "did not 'respond[] reasonably' to the risk posed by COVID-19." (ECF No. 63, PageID.955 (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).) And, said the Magistrate Judge, an air-quality expert's findings "would say little about whether the Defendants acted reasonably." (ECF No. 63, PageID.956.)

Ryan objects. He says that he is not seeking a court-appointed expert, that he is not asking for Defendants to share in the cost of the expert, and that Rule 706 does not govern his request. (ECF No. 66, PageID.1292.) Ryan instead asks that the Court order Washington and Nagy to use JCF's prisoner-benefit fund to pay for the air-quality expert. (*Id.*)

The Court will overrule this objection. It does appear that JCF has a prisoner-benefit fund that can be used for "services, equipment, and supplies that provide a direct benefit to the prisoner population." MDOC Policy Directive 04.02.110 (eff. Nov. 1, 2017.) But Ryan cites no authority that permits this Court to order Director Washington or Warden Nagy to use those funds to advance a single inmate's litigation position—even if that position might benefit the prison population as a whole. The policy directive indicates that "[t]he PBF Committee shall be responsible for recommending to the Warden which PBF expenditures should be approved." *Id*. Thus, if Ryan desires, he can attempt to persuade the PBF Committee to recommend to Nagy that air-quality testing be performed at JCF.

## B.

The Magistrate Judge denied Ryan's request to order Washington and Nagy to provide him with supervised internet access so that Ryan could gather evidence in support of this litigation. (*See* ECF No. 63, PageID.956–958.)

Ryan objects. He claims that it violates the Due Process Clause and the analogous provision in the Michigan Constitution to be deprived of gathering evidence in support of his case. (ECF No. 66, PageID.1293.)

The objection will be overruled. Ryan cites no authority providing that he has a due process right to supervised internet access to gather evidence in support of a civil lawsuit.

## C.

As explained, in addressing Ryan's motion to compel, the Magistrate Judge noted that Ryan had admitted that, except for one day, he had been housed in a single-person cell for the past three years. (ECF No. 63, PageID.946.) She further explained, "Ryan does not have standing to challenge Defendants' 'mass housing' practices merely because it is possible that he may be subjected to them later." (ECF No. 63, PageID.946–947 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).)

Ryan objects to this determination. (ECF No. 66, PageID.1294.) He states that he has been housed at more than 12 facilities in the past 12 years. (ECF No. 66, PageID.1295.) And Ryan says that he has been placed in "double cell housing multiple times throughout his incarceration in the MDOC as well as at JCF." (ECF No. 66, PageID.1294.) Ryan further explains that he does not have a special accommodation that ensures a single-person cell. (ECF No. 66, PageID.1294; *see also* ECF No. 64-2, PageID.1008 ("I have a bunk bed restriction right now which is temporary.").) According to Ryan, he could be transferred to a facility other than JCF and be placed in shared housing or the MDOC could take away his wheelchair, which has happened in the past. (ECF No. 66, PageID.1295.) Ryan thus argues that while he may not currently be in shared housing, "there is a very real danger that Plaintiff will be put

6

there tomorrow, the next day, week[,] month or year." (ECF No. 66, PageID.1296; *see also* ECF No. 64, PageID.1052 ("I could be moved to a pole barn tomorrow. They bounce people around [JCF] like ping pong balls.").) Thus, Ryan argues that "[t]he Courts and defendants attempt to limit [him] to [his] current situation is unreasonable." (*Id.*)

Not only has the Magistrate Judge's order and Ryan's objection raised questions about Ryan's standing to pursue injunctive relief, so has the discovery taken since this Court's January 2022 order. During his deposition, Ryan admitted that he had been at JCF for about three years (ECF No. 64-2, PageID.1006), that in those three years he had been housed in a single-person cell (except for one day in the pole barn) (*id.* at PageID.1007), and that JCF staff had tried to place him in a two-person cell, but the doors to those cells cannot accommodate his wheelchair. (ECF No. 64-2, PageID.1012, 1016.) (The one day that Ryan spent in the pole barn was because he contracted COVID-19, and the pole barn was being used to quarantine infected prisoners. (ECF No. 64-2, PageID.1009.).) Ryan further testified that he contracted COVID-19 on two occasions, but he did not attribute those infections to sharing a cell or pole barn. (*See* ECF No. 64-2, PageID.1015–1016.) As for Nagy, his declaration states that Ryan has been vaccinated against COVID-19 and that he has also received one booster. (ECF No. 64-3, PageID.1094.) Nagy also notes that Ryan is "permanently assigned to a wheelchair," that all inmates permanently assigned to a wheelchair are assigned to "single-man or two-man handicap cells with special accommodations,"

and that "[u]nless [Ryan's] required medical accommodations change, [he] will remain in a single man cell." (ECF No. 64-3, PageID.1095.)

Given the evidence that has come to light since this Court's January 2022 order, the Court questions whether Ryan has Article III standing to pursue prospective, injunctive relief. Although Ryan has been placed in a two-person cell at various times during his 13-year incarceration, it appears that has not been the case for the past *three* years. (ECF No. 64-2, PageID.1006.) And Warden Nagy has averred that so long as Ryan remains at JCF, and so long as his "required medical accommodations" do not change, Ryan "will remain in a single man cell." (ECF No. 64-3, PageID.1095.) And nothing before the Court suggests that a transfer is likely, let alone imminent. In other words, everything suggests that for the foreseeable future, Ryan will not be required to share a cell or pole barn with other inmates. Yet as injunctive relief, Ryan seeks an order that prohibits MDOC from transferring him to a facility where he could be placed in a two-person cell, that prohibits MDOC from otherwise placing him in shared housing, and, more generally, that prohibits MDOC from using shared housing. (*See* ECF No. 64-2, PageID.1020, 1022; ECF No. 6, PageID.98.) On the record before the Court, the harm that Ryan seeks to enjoin—placement in shared housing—is not "actual or imminent." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An injury sufficient to satisfy Article III must be . . . actual or imminent, not conjectural or hypothetical. . . . An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." (internal quotation marks omitted)). It

8

thus appears that Ryan lacks standing to seek prospective, injunctive relief, which, in turn, means that the Court cannot exercise subject-matter jurisdiction over Ryan's claims insofar as they seek that relief.

Accordingly, on or before January 16, 2023, Ryan is to show cause in writing why he has Article III standing to pursue an injunction against his placement in shared housing. *See Susan B. Anthony*, 573 U.S. at 158 ("The party invoking federal jurisdiction bears the burden of establishing standing." (internal quotation marks omitted)). If Ryan fails to file a show-cause response by January 16, or if the show-cause response does not persuade the Court that Ryan has standing to seek prospective injunctive relief, the Court will dismiss Ryan's claims for injunctive relief without prejudice.

Defendants are to file a short reply to Ryan's show-cause response by January 30, 2023. Defendants should have Nagy clarify whether, so long as Ryan is at JCF, he will not share a cell or housing.

That leaves a loose end. Washington and Nagy have filed for summary judgment. (ECF No. 65.) And, very unfortunately, Ryan has again contracted COVID-19 and, because he requires a wheelchair, could not stay at JCF's unit for infected prisoners. (ECF No. 69, PageID.1304.) Ryan was transferred to the hospital and does not have access to his legal materials or a law library. So he asks for "a stay and extension of time." (ECF No. 69, PageID.1306.)

Given that this Court must assure itself that Ryan has Article III standing to pursue prospective, injunctive relief, the Court will stay this case until it decides

whether Ryan has standing. Thus, Ryan's response to Defendants' summary-judgment motion will not be due until after this Court enters an order resolving the standing issue. At that point, if Ryan has standing, the Court will set a deadline for Ryan to respond to Defendants' summary-judgment motion.

Accordingly, on or before January 16, 2023, Ryan is to explain why he has standing to pursue forward-looking, injunctive relief. Ryan's objections to the Magistrate Judge's order are OVERRULED except for his objection that his claims should not be limited to his current housing situation but also include the potential for placement in shared housing in the future. The resolution of that objection depends on Ryan's show-cause response. This case is STAYED until further order of the Court.

SO ORDERED.

Dated: November 21, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE