UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL RYAN,

    Plaintiff,

v.

NOAH NAGY, and HEIDI
WASHINGTON,

    Defendants.

Case No. 20-11528
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER DISMISSING REMAINING CLAIMS**

Sean Ryan is an inmate at the G. Robert Cotton Correctional Facility (JCF), a Michigan Department of Corrections prison located in Jackson, Michigan. Many inmates at JCF live in shared housing: either two inmates share a small cell or 150 inmates share a large pole barn. But not Ryan. He is assigned a private single-person cell to accommodate his need for a wheelchair. Ryan believes that because inmates must share sleeping and living quarters, they are at risk of contracting contagious diseases including, but not limited to, COVID-19. Based on this belief, Ryan maintains that MDOC Director Heidi Washington's and JCF Warden Noah Nagy's policy or practice of shared housing violates the Eighth Amendment of the U.S. Constitution and the analogous provision of the Michigan Constitution. So Ryan filed this lawsuit.

In January 2022, this Court dismissed Ryan's claims insofar as they sought monetary relief for past injuries. *See generally Ryan v. Nagy*, No. 20-11528, 2022 WL

260812 (E.D. Mich. Jan. 26, 2022), *available at* (ECF No. 35). What remained of this case was Ryan's claims for prospective, injunctive relief against Defendants' shared housing policy. *Id*. at *7. The Court permitted the parties to gather evidence relevant to that forward-looking relief.

So the parties engaged in discovery. In one order largely denying a motion to compel filed by Ryan, Magistrate Judge Patricia T. Morris raised concerns that Ryan lacked standing to challenge Defendants' shared housing policy or practice. (ECF No. 63, PageID.946.) She noted that Ryan had admitted during his deposition that he was housed in a single-person cell for every day but one over the past three years. (*Id*.) She further explained that "Ryan does not have standing to challenge Defendants' 'mass-housing' practices merely because it is possible that he may be subjected to them later." (ECF No. 63, PageID.946–947 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993)).)

Ryan objected to this determination, claiming that he had been housed at more "than 12 facilities in the past 12 years" and that he had been placed in "double cell housing multiple times throughout his incarceration in the MDOC as well as at JCF." (ECF No. 66, PageID.1295.) Ryan said he does not have a special accommodation that ensures a single-person cell, and that he could be transferred to another facility and be placed in shared housing. (*Id*.) He also said that the MDOC could take away his wheelchair, which has happened in the past. (*Id*.) Thus, Ryan argued that while he may not currently be in shared housing, "there is a very real danger that [I] will be put there tomorrow, the next day, week[,] month, or year." (*Id*. at PageID.1295; *see*

*also* ECF No. 64, PageID.1052 ("I could be moved to a pole barn tomorrow. They bounce people around [JCF] like ping pong balls.").)

Given the Magistrate Judge's concerns about standing, Ryan's objections, and the other evidence that came to light during discovery, this Court directed Ryan to show cause why his claims for prospective injunctive relief pertaining to Defendants' shared housing policy should not be dismissed for lack of Article III standing. (ECF No. 71, PageID.1328.) The Court stayed the case pending a determination on the show cause order. (*Id.*)

For the reasons explained below, the Court finds that Ryan lacks Article III standing to bring his remaining federal claim for prospective injunctive relief and, thus, dismisses the case.

## I.

To start, some background on Ryan's claim and his housing experience while at JCF is helpful.

Ryan believes the Defendants' shared housing policy exposes him to an unconstitutional risk of contracting airborne illnesses like, but not limited to, COVID-19 in violation of the Eighth Amendment of the U.S. Constitution and Article I, § 16 of the Michigan Constitution. (ECF No. 6, PageID.96.) That shared housing policy, or "mass-housing" as Ryan describes it, is the practice of housing inmates in either two-person cells or a "pole barn." (*Id.*) Apparently, the prison pole barn is a large building with multiple cubicles defined by half walls; and within a cubicle, there are beds for eight inmates.

3

But Ryan is neither housed in a pole barn nor a two-person cell. (ECF No. 64-2, PageID.1007.) Because Ryan has a medical accommodation for a permanent wheelchair, JCF has placed him in a single-person cell. (ECF No. 76-1, PageID.1597.) According to Ryan, his wheelchair only fits in certain single person cells, and cannot fit through the door of any two-person cells at JCF. (ECF No. 64-3, Page ID.1012). Thus, apart from a one-day quarantine and a short stay at a hospital, Ryan has been consistently housed in a single-person cell since entering JCF on April 9, 2019. (ECF No. 64-3, Page ID.1094; ECF No. 64-2, PageID.1007-10; ECF No. 76-1, PageID.1597.) And Warden Nagy submitted an affidavit maintaining that, as long as Ryan is housed at JCF and as long as he remains a permanent wheelchair user, he will remain in a single-person cell. (ECF No. 76-1, PageID.1597.) Nagy also says there are no current plans to move Ryan to another facility. (ECF No. 76-1, PageID.1597.)

For his part, Ryan does not allege that Defendants have made any plans, threats, or proposals to move him from his single-person cell, to move him to another facility, or to alter his permanent wheelchair medical accommodation. Ryan simply contends that it is possible he could be moved to another facility, his wheelchair could be taken from him, and he could be placed in shared housing. Ryan also alleges three past occurrences where JCF employees tried—albeit unsuccessfully—to move him to a two-person cell. (ECF No. 74, PageID.1552.)

## II.

With that background, the Court moves to the law. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (quotations and citations omitted). The standing requirement prevents federal courts from issuing advisory opinions or deciding theoretical questions. *Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 303 (6th Cir. 2019).

Moreover, Article III "[s]tanding is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *State by & through Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (citations omitted). And because it is jurisdictional, this Court has both the obligation and the ability to raise standing sua sponte. *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012); *see also Chapman*, 940 F.3d at 304 ("[W]e are required in every case to determine—sue sponte if the parties do not raise the issue—whether we are authorized by Article III to adjudicate the dispute.").

Although the Court, rather than the parties, raised the issue of Ryan's standing, the Court evaluates standing under the same standards as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See generally Mott v. Mittel Steel*, No. 17 CV 186, 2017 WL 6502829, at *2 (N.D. Ohio Apr. 10, 2017). A motion to dismiss under Rule 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A facial attack tests the pleading's sufficiency, not the veracity of its allegations. *Stout v. United States*, 721 F. App'x 462, 465 (6th Cir. 2018). But a factual challenge

Case 2:20-cv-11528-LJM-PTM ECF No. 81, PageID.1627 Filed 04/20/23 Page 6 of 11

requires the district court to "weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Bowers v. Wynne*, 615 F.3d 455, 457 (6th Cir. 2010) (citing *Golden*, 410 F.3d at 887).

Because the parties, at the Court's request, briefed the issue of standing and provided additional information on the issue in so briefing, (ECF Nos. 74,76,) the Court considers this as a factual challenge to Ryan's standing.

### III.

To have standing, a plaintiff "must have suffered an injury-in-fact that is fairly traceable to the defendant's conduct and would likely be redressed by a favorable decision from a court." *Bouye v. Bruce*, — F.4th —, No. 21-6195, 2023 WL 2301473, at *3 (6th Cir. Mar. 1, 2023) (citing *Rice v. Vill. of Johnstown*, 30 F.4th 584, 591 (6th Cir. 2022)).

To have standing "when seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm." *See Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An injury sufficient to satisfy Article III must be . . . actual or imminent, not conjectural or hypothetical. . . . An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.").

Ryan cannot show actual present harm. There is no dispute that Ryan is not currently subject to Defendants' shared housing policy. Thus, the issue boils down to whether he faces a substantial risk of future harm from this housing policy. And that

alleged future harm must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Ryan says that the threat of contracting an airborne contagious disease is, on its own, enough to demonstrate standing. (ECF. No. 74, Page ID.1551–1552.) But that threat only materializes if he is housed in a shared cell or pole barn. Yet he points to no statements, plans, or actions that give any suggestion he will be moved from his single-person cell or to another facility. Nor does he point to any facts indicating he faces a significant threat, or any threat at all, of losing his permanent wheelchair accommodation, thereby placing him at risk of being moved to shared housing. If anything, the facts suggest that Ryan cannot be transferred to a two-person cell because that cell could not accommodate his wheelchair. Instead, Ryan makes conclusory statements without any factual support that he could be moved into shared housing or have his wheelchair taken away any day, week, month, or year. But such speculative statements are precisely the sort of "conjectural or hypothetical" allegations of future injury that the Court does not have jurisdiction over given Article III's standing requirement. *See generally, Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.") (internal citations omitted); *See also, Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) (finding that a debtor's fear of future harm did not establish injury-in-fact element of standing, noting "the

7

Supreme Court has explained that the fear of a future harm is not an injury in fact unless the future harm is 'certainly impending.'")

Ryan also says that Defendants' past conduct supports his assertion that he faces an actual threat of being moved to mass housing any day. Specifically, in his response to the Court's show cause order, Ryan says that Defendants' employees have unsuccessfully attempted to move him to a two-person cell three times over the past two years—but that they relented after he refused. (ECF No. 74, PageID.1552.)

As an initial matter, past harm does not on its own establish a concrete or imminent risk of future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) (providing that to establish the injury-in-fact element of standing, "[t]he 'threat' of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone").

If anything, the past conduct Ryan alleges actually cuts against finding he has standing. That Defendants were unsuccessful in moving Ryan from a single-person cell in the past suggests Defendants are likely to be unsuccessful at moving Ryan in the future, especially if Ryan's medical accommodations do not change. And this is consistent with Nagy's representations in his affidavit that while Ryan is housed at JCF and has a permanent wheelchair accommodation, Ryan will not be moved out of his single-person cell into shared housing. (ECF No. 76-1, PageID.1597.)

Finally, Ryan's reliance on *Fofana v. Albence* fails to support his standing argument. *See* 454 F. Supp. 3d 651, 662 (E.D. Mich. 2020). *Fofana* dealt with a group

8

of detainees petitioning the court for a writ of habeas corpus due to Immigration and Customs Enforcement's overall failure to adequately respond to the risk of harm posed to detainees by COVID-19. *Id.* at 655. The respondent argued that the petitioners there did not have standing because the facilities they were housed in did not have any cases of COVID-19 and there were adequate precautions in place to control the virus. *Id.* at 661. The Court rejected that argument, noting that the increased risk of contagious diseases in confinement settings was well documented, that respondent had not taken adequate measures to protect petitioners from COVID-19, and that petitioners did "not need to allege that the jails currently have confirmed COVID-19 cases or that they have contracted the virus to demonstrate standing." *Id.* at 662. Importantly, there was no question that the detainees in *Fofana* were themselves exposed to the challenged conduct causing the alleged injury—the respondent's inadequate measures in response to the COVID-19 pandemic in the facilities where petitioners were detained.

Here, Ryan is not personally subject to or at risk of being personally subject to the policy he seeks to enjoin. Ryan cannot adequately establish an injury-in-fact resulting from a policy that does not apply him and is unlikely to apply to him in the future. The holding in *Fofana* thus does nothing to help Ryan overcome his failure to establish that he faces a significant risk of future injury from Defendants' shared housing policy.

Because Ryan has failed to establish an injury-in-fact under Article III, this Court does not have jurisdiction over his Eighth Amendment claim for prospective,

9

injunctive relief against Defendants for their mass housing policy. So Ryan's Eighth Amendment claim is dismissed.

## IV.

The only remaining claim arises under state law. By statute, federal courts may exercise supplemental jurisdiction over certain state-law claims. *See* 28 U.S.C. § 1367(a). But federal courts have discretion to decline to exercise supplemental jurisdiction over state-law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (subsections omitted); *see also, Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (*citing Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, at 350 n.7 (1988)) (stating that "28 U.S.C. § 1367(c)(3)… provides that a district court 'may' (rather than must) decline to exercise jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction'" and noting that "[a]s a rule of thumb…. when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.") Because the Court has dismissed all federal claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Ryan's parallel claim under the Michigan Constitution.

## V.

In sum, Ryan does not have standing to pursue his remaining federal claim and the Court declines to exercise supplemental jurisdiction over his state-law claim. Accordingly, this case is DISMISSED. A separate judgement will follow.

SO ORDERED.

Dated: April 20, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
